UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 05-153 (WOB)

STEPHEN MANN                                            PLAINTIFF

VS.              MEMORANDUM OPINION AND ORDER

MICHAEL HELMIG                                          DEFENDANT

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 arising out of the confiscation of plaintiff's firearms. Plaintiff alleges violations of his federal constitutional rights under the Second, Fourth, Fifth, and Fourteenth Amendments, as well as a state law claim for conversion. The case is before the court on the parties' cross motions for summary judgment. (Doc. ## 28, 38)

The court heard oral argument on these motions on Thursday, March 29, 2007. Bryan Perkins represented the plaintiff, and Jeff Mando represented the defendant. Also present was plaintiff Stephen Mann. Official court reporter Joan Averdick recorded the proceedings.

*Factual and Procedural Background*

Plaintiff Stephen Mann ("Mann") is a resident of Burlington, Kentucky. On or about December 1, 1999, the Kenton County District Court entered a Domestic Violence Order ("DVO") against Mann based on a petition filed by Mann's sister, Gladys Wagner. (Exh. 1, Def. MSJ) Among other things, the DVO restrained Mann

from purchasing, owning, or possessing firearms. (Exh. 2, Def. MSJ)

At Wagner's request, the Kenton County District Court extended the DVO several times. In 2002, Mann petitioned the court to amend the DVO to lift the firearm restrictions on the grounds that he and Wagner were not "intimate partners" within the meaning of 18 U.S.C. § 922(g).

On November 6, 2002, the Kenton County court issued an opinion stating that it "may," depending on the relationship of the parties, be a violation of 18 U.S.C. § 922(g) for Mann to possess firearms while subject to a DVO. (Exh. 4, Def. MSJ) The court further stated that it would "issue a new order of protection incorporating the appropriate statement of the law into its order and extending the order for one additional year." (*Id.*) The court then entered an Amended DVO which stated: "Pursuant to 18 U.S.C. § 922(g)(8), it **may** be a federal violation to purchase, receive or possess a firearm or ammunition while subject to this order." (Exh. 5, Def. MSJ) (emphasis added)

On December 1, 2003, the Amended DVO bearing the same language was extended through December 1, 2005. (Exh. 6, Def. MSJ)

On May 16, 2005, while the Amended DVO was still in effect, the Boone County Sheriff's Department received a call reporting gunshots at plaintiff's residence. Deputy Chris Combs responded

2

to the call.

Deputy Combs arrived at plaintiff's house and approached the front door. Plaintiff opened the door and let Combs into the house. Combs told plaintiff he had received a "shots fired" call and asked if plaintiff was the source of the shots. Plaintiff stated that he had been shooting at a target in his backyard. Plaintiff then led Combs through the kitchen, out the back door and onto the porch, where he showed Combs three rifles sitting on his picnic table. Combs thanked plaintiff for his cooperation and left.

When he returned to his car, Deputy Combs received a message that the person who had made the "shots fired" call wanted to talk with him. That person was Mark Mann, plaintiff's brother, who lived next door. Deputy Combs drove next door, where he was approached by Mark Mann's wife and another woman. After Deputy Combs explained that it was not illegal for plaintiff to fire his guns in his own back yard in that part of the county, the women told Combs that plaintiff was subject to a DVO.

Deputy Combs returned to plaintiff's property to discuss the DVO with him. By then, plaintiff had returned to the back yard and resumed firing his guns. Deputy Combs told plaintiff to unload and put his weapon down, which plaintiff did. Deputy Combs asked plaintiff if there was a DVO against him, and plaintiff said yes. Plaintiff and Deputy Combs went into the

house where plaintiff showed Combs a copy of the amended DVO entered on December 1, 2003.  Plaintiff stated that it did not prevent him from possessing firearms because he was not an "intimate partner" of the person who took out the DVO.[1]  Reviewing the language of the amended DVO, however, Deputy Combs was unsure whether it restricted plaintiff from having guns.

Plaintiff then gave Deputy Combs the phone number of his attorney who had represented him in connection with the DVO.  Combs tried to reach that attorney but could not.  Combs then tried to reach an attorney at the Boone County Attorney's Office but could not do so.  Combs then called the Commonwealth Attorney's Office in Boone County and spoke to an attorney in that office regarding the situation.  The attorney told Combs that plaintiff was not permitted to possess firearms if he was subject to an active DVO.

Deputy Combs then told plaintiff that he was going to take all his firearms and asked where they were located.  Combs and another deputy who had arrived retrieved a total of six guns and a box of ammunition.  After giving plaintiff a receipt for the

---

[1] In the view of this court, plaintiff was correct.  *See* 18 U.S.C. §§ 922(g)(8), 921(a)(32).  Only a person who has been restrained by a court order from harassing, stalking or threatening an "intimate partner" is prohibited by this subsection from possessing firearms.  An "intimate partner" is defined, so far as pertinent here, as "one who cohabitates or has cohabited with the person."  "Cohabitates" implies a sexual relationship.  *See Webster's II New College Dictionary* 218 (2001).  Everyone agrees no such relationship existed here.

4

weapons, the deputies left and took the items to the Boone County Sheriff's Department where the weapons were logged into the property room.

Sometime thereafter, the Boone County Sheriff's office informed plaintiff that he could come retrieve his guns, but plaintiff apparently has not done so.

Plaintiff filed this action against Boone County Sheriff Helmig in his official capacity only on August 2, 2005. He alleges a violation of 42 U.S.C. § 1983 as well as a claim for conversion under Kentucky law. Both parties have filed motions for summary judgment, which are ripe for resolution.

### *Analysis*

As stated above, this court agrees with plaintiff that he was wrongfully deprived of his property. Even if this would amount to a constitutional violation, however (which the court does not decide), there is no liability on the part of the Sheriff or County under 42 U.S.C. § 1983.

To succeed on his claim against Boone County Sheriff Michael Helmig in his official capacity, plaintiff must prove that his alleged constitutional injury resulted from a "policy" or "custom" attributable to the County. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 694 (1978). "The acts in question must be 'acts which the municipality has officially sanctioned or ordered.'" *Holloway v. Brush*, 220 F.3d 767, 773 (6th Cir. 2000)

(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Acts will only be construed as official policy when they are those of a body or an official "responsible for establishing final government policy respecting such activity." *Pembaur*, 475 U.S. at 483.

Plaintiff cannot show that his guns were unlawfully seized pursuant to an official custom or policy of Boone County. His argument that Deputy Combs's reliance on the legal advice of the assistant attorney in the Commonwealth Attorney's office is misplaced, for such a person is not a "final decisionmaker" on behalf of the County. *See Holloway*, 220 F.3d at 773 (holding that action of Clermont County Assistant Prosecutor did not establish "custom or policy" of county); *Pusey v. City of Youngstown*, 11 F.3d 652, 659 (6th Cir. 1993) (city prosecutor did not possess final authority to establish municipal policy).[2]

Second, plaintiff's argument that Sheriff Helmig "ratified" Deputy Combs's acts fails as a matter of law, for the evidence is undisputed that Sheriff Combs was unaware of the seizure until

---

[2] Plaintiff's reliance on *Pembaur* is also misplaced, as the chief County Prosecutor there had been delegated authority, pursuant to an Ohio statute, to direct the actions of the county police officers. *Pembaur*, 475 U.S. at 484-85. The Supreme Court thus concluded that the County Prosecutor's directive that the police officers enter plaintiff's office went beyond mere "legal advice" and in fact constituted the final word on county policy in that situation. *Id.* Also, the directive was given by the Prosecutor himself. Here, only an assistant was involved, and he only gave advice.

6

served with this lawsuit. By that time, plaintiff had been notified that he could come retrieve his firearms.

In sum, plaintiff has not shown, as a matter of law, that this single, isolated incident was part of any pattern of unconstitutional conduct by Boone County, or that it was otherwise taken pursuant to any County policy or custom. Defendant is thus entitled to summary judgment on plaintiff's federal claims.

Finally, plaintiff has also alleged a claim for conversion. However, this claim presents solely a question of state law, and given that the court is dismissing plaintiff's federal claims, the court will decline to exercise its supplemental jurisdiction over it, pursuant to 28 U.S.C. § 1367©).

Therefore, having heard the parties, and the court being otherwise sufficiently advised,

**IT IS ORDERED** that (1) defendant's motion for summary judgment (Doc. #38) be, and is hereby, **GRANTED.** Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**, and plaintiff's state law claim is **DISMISSED WITHOUT PREJUDICE;** and (2) plaintiff's motion for summary judgment (Doc. #28) be, and is hereby, **DENIED.** A separate judgment shall enter concurrently herewith.

This 30th day of March, 2007.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

TIC: 25 min.